**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **NANCY GREIWE**, *individually and on behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>**TRANSUNION LLC**,<br><br>Defendant. | Case No. 1:26-cv-00568<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Nancy Greiwe, individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendant TransUnion LLC ("TransUnion" or "Defendant") and alleges, upon personal knowledge as to her own actions, and upon information and belief, including her counsel's investigations, as to all other matters, as follows:

**SUMMARY OF THE ACTION**

1. Plaintiff brings this class action on behalf of all persons whose sensitive personally identifiable information ("PII" or "Private Information")[1] was entrusted to Defendant and that was impacted in a data breach Defendant publicly disclosed on August 26, 2025.

2. Defendant TransUnion is a credit reporting agency that maintains the sensitive PII and financial information of tens of millions of Americans.

3. On August 26, 2025, TransUnion reported that the Private Information of 4,461,511 of its customers had been accessed in a data breach involving a third party application that TransUnion discovered on or about July 30, 2025 (the "Data Breach").[2]

---

[1] Personally identifiable information refers to information that can be used to distinguish or trace an individual's identity. 2 C.F.R. § 200.79. At a minimum, it includes all information that on its face expressly identifies an individual.

[2] *Data Breach Notifications/TransUnion LLC*, Off. of the Me. Atty. Gen., https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/3dcd9b7c-bce3-4685-bffd-f728ce96e2fd.html (last visited Jan. 15, 2026).

4. Accordingly, Plaintiff brings this action against Defendant for its failure to properly secure and safeguard her and Class Members' sensitive Private Information, including names, dates of birth, and Social Security numbers.

5. Specifically, Plaintiff brings this action on behalf of all persons whose Private Information was compromised as a result of Defendant's failure to: (i) adequately protect the Private Information of Plaintiff and Class Members; (ii) warn Plaintiff and Class Members of its inadequate information security practices; and (iii) contract with responsible contractors. Defendant's conduct amounts to at least negligence and violates federal statutes designed to prevent or mitigate this very harm.

6. Plaintiff and Class Members have suffered actual, present, and foreseeable injuries as a direct result of the Data Breach, including: (a) theft of their Private Information; (b) costs associated with the detection and prevention of identity theft for their respective lifetimes; (c) costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the consequences of the Data Breach; (d) invasion of privacy; (e) the present and/or imminent injury arising from actual and/or potential fraud and identity theft posed by their personal data being placed in the hands of the ill-intentioned hackers and/or criminals; (f) damages to and diminution in value of their personal data entrusted to Defendant on the mutual understanding that Defendant would safeguard their Private Information against theft and not allow access to and misuse of their personal data by others; and (g) the continued risk to their Private Information, which remains in Defendant's possession, and which is subject to further injurious breaches, so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff and Class Members' Private Information. Plaintiff and Class Members, at the very least, are entitled to damages and injunctive relief tailored to address the vulnerabilities exploited

in the breach, and designed to protect Plaintiff's and Class Members' Private Information, as well as an order directing the destruction and deletion of all Private Information for which Defendant cannot demonstrate a reasonable and legitimate purpose for continuing to maintain possession of such Private Information.

7. Defendant is one of the three major credit reporting agencies in the United States. As a regular part of its business, Defendant obtains and maintains the sensitive Private Information, including financial information, of tens of millions of Americans. Defendant requires its customers to provide it with a broad range of sensitive Private Information, including Social Security Numbers. Defendant understands the need to protect the privacy of consumers and use security measures to protect Class Members' Private Information from unauthorized disclosure.

8. Defendant disregarded Plaintiff's and Class Members' rights by intentionally, willfully, recklessly, or negligently failing to take and implement adequate and reasonable measures to ensure that Plaintiff's and Class Members' Private Information was safeguarded, failing to take available steps to prevent an unauthorized disclosure of data, and failing to follow applicable, required and appropriate protocols, policies and procedures regarding the encryption of data, even for internal use.

9. As a result of Defendant's actions, Plaintiff's and Class Members' Private Information was compromised by being accessed and exfiltrated by an unknown and unauthorized third party. Plaintiff and Class Members have a continuing interest in ensuring that their information is and remains safe, and they are entitled to injunctive and other equitable relief.

10. By this action, Plaintiff seeks compensatory damages together with injunctive relief to remediate Defendant's failure to secure her and Class Members' Private Information, and to provide damages, among other things, for Plaintiff and Class Members to secure identity theft

insurance, and credit repair services for Class Members' respective lifetimes to protect the Class of Data Breach victims from identity theft and fraud.

## PARTIES

11. Plaintiff Nancy Greiwe is a citizen and resident of Ohio.

12. Plaintiff Greiwe learned of the Data Breach when she received by mail a notice of the Data Breach from Defendant dated September 2, 2025.

13. Defendant TransUnion LLC is a limited liability company organized under the laws of Delaware, with its principal place of business in Chicago, Illinois.

## JURISDICTION AND VENUE

14. This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. The number of class members is more than 100 and at least one member of the Class defined below is a citizen of a different state that is diverse from Defendant's citizenship. Thus, minimal diversity exists under 28 U.S.C. § 1332 (d) (2) (A). Defendant has its principal place of business located in this District.

15. This Court has personal jurisdiction over Defendant because Defendant is maintains its principal place of business in this District.

16. Venue is proper in this Court because Defendant's principal place of business is located in this District, and because a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District.

## FACTUAL ALLEGATIONS

### *The Data Breach*

17. A third-party threat actor gained access to Defendant's systems, including the

Private Information of Defendant's customers, on or about July 28, 2025.[3]

18. After gaining access to Plaintiff's and Class Members' sensitive Private Information, the third-party actor exfiltrated the Private Information of approximately 4.46 million people.

19. Among the Private Information compromised in the Data Breach were: names, dates of birth, Social Security numbers, billing addresses, email addresses, phone numbers, reasons for customer transactions (such as requests for a free credit report), and customer support tickets and messages.[4]

20. At all relevant times herein, Defendant implicitly and/or explicitly represented to Plaintiff and Class Members that their Private Information would be secured.[5]

21. Yet, Defendant failed to timely notify all its customers of the breach, waiting nearly a month to reveal to the public that the Data Breach had occurred, thereby causing unnecessary delay and preventing affected individuals from securing their data.

22. Defendant's Notice of Breach letters to individuals impacted by the Data Breach understated the significance of the data breach, stating that "unauthorized access includes some limited personal information belonging to you" and claiming that the exfiltrated data did not include "core credit information" even though the "impacted data elements" listed in the letters sent to many consumers, including Plaintiff, included their Social Security numbers—critical Private Information.[6]

---

[3] *Data Breach Notifications/TransUnion LLC*, Off. of the Me. Atty. Gen., *supra*, n.2.

[4] Kurt Knutsson, *TransUnion becomes latest victim in major wave of Salesforce-linked cyberattacks, 4.4M Americans affected*, Fox News (Aug. 31, 2025), https://www.foxnews.com/tech/transunion-becomes-latest-victim-major-wave-salesforce-linked-cyberattacks-4-4m-americans-affected (last visited Jan. 15, 2026).

[5] *Data Security*, TransUnion, https://www.transunion.com/client-support/data-security (last visited Jan. 15, 2026).

[6] TransUnion, *Adult Consumer Letter*, https://www.maine.gov/cgi-bin/agviewerad/ret?loc=2968 (last visited Jan. 15, 2026).

***Defendant Collected and Stored Plaintiff's and Class Members' Private Information***

23. In its regular course of business Defendant acquires, collects, stores the Private Information of its customers. Accordingly, at all relevant times herein, Defendant had a duty to ensure reasonable security over Plaintiff's and Class Members' Private Information.

24. As a condition of obtaining Defendant's services, Plaintiff and Class Members were required to entrust Defendant with highly sensitive Private Information. Defendant, in turn, stored that information on Defendant's system that was inadequately monitored, and which was ultimately affected by the Data Breach.

25. By obtaining, collecting and storing Plaintiff's and Class Members' Private Information, Defendant assumed legal and equitable duties over the Private Information and knew or should have known that it was thereafter responsible for protecting Plaintiff's and Class Members' Private Information from unauthorized disclosure.

26. Plaintiff and Class Members have taken reasonable steps to maintain their Private Information's confidentiality. Plaintiff and Class Members relied on Defendant to keep their Private Information confidential and securely maintained, to use this information for business purposes only and to make only authorized disclosures of this information.

27. Defendant could have prevented the Data Breach by properly monitoring its systems, securing and encrypting and/or more securely encrypting its servers generally, as well as Plaintiff's and Class Members' Private Information.

28. Defendant's negligence in safeguarding Plaintiff's and Class Members' Private Information is underscored by the known high frequency of cyberattacks and data breaches.

29. Due to the high-profile nature of other such breaches, Defendant was and/or certainly should have been on notice and aware of such incidents occurring in its industry given

the value of the sensitive Private Information it maintained. Accordingly, Defendant should have assumed and fulfilled its duty of preparing for such an incident. This is especially true given that Defendant is a large, sophisticated operation with the resources to put adequate data security protocols in place.

***Defendant's Failure to Prevent and Identify the Data Breach***

30. As stated above, Defendant admits that an unauthorized third party accessed its systems, including the Private Information of its customers. Defendant failed to take adequate measures to protect its computer systems against unauthorized access.

31. The Private Information that Defendant allowed to be exposed in the Data Breach is the type of private information that Defendant knew or should have known would be the target of cyberattacks.

32. Despite its own knowledge of the inherent risks of cyberattacks, and notwithstanding the FTC's data security principles and practices,[7] Defendant failed to disclose that its systems and security practices were inadequate to reasonably safeguard Plaintiff's and Class Members' Private Information.

33. The FTC directs businesses to use an intrusion detection system to expose a breach as soon as it occurs, monitor activity for attempted hacks, and have an immediate response plan if a breach occurs.[8]

***Defendant Knew—or Should Have Known—of the Risk of a Data Breach***

34. It is well known that Private Information is an invaluable commodity and a frequent target of hackers.

---

[7] *Protecting Personal Information: A Guide for Business*, FTC (Oct. 2016), https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last visited Sept. 10, 2025).

[8] *Id.*

35. Defendant's data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in recent years. In light of past high profile data breaches at industry-leading companies, including, for example, Microsoft (250 million records, December 2019), Wattpad (268 million records, June 2020), Facebook (267 million users, April 2020), Estee Lauder (440 million records, January 2020), Whisper (900 million records, March 2020), and Advanced Info Service (8.3 billion records, May 2020), Defendant knew or, if acting as a reasonable business, should have known that the Private Information it collected and maintained would be vulnerable to and targeted by cybercriminals.

36. In 2024, 3,158 data breaches occurred, exposing approximately 1,350,835,988 sensitive records—a 211% increase year-over-year.[9]

37. Indeed, cyberattacks have become so notorious that the FBI and U.S. Secret Service have issued a warning to potential targets, so they are aware of and take appropriate measures to prepare for and are able to thwart such an attack.[10]

38. Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known to the public and Defendant.

39. Despite the prevalence of public announcements of data breach and data security compromises, Defendant failed to take appropriate steps to protect the Private Information of Plaintiffs and Class Members from being compromised.

40. This readily available and accessible information confirms that, prior to the Data Breach, Defendant knew or should have known that (i) ransomware actors were targeting entities such as Defendant, (ii) ransomware gangs were ferociously aggressive in their pursuit of entities

---

[9] Identity Theft Resource Center, *ITRC 2024 Data Breach Annual Report* (Feb. 4, 2025), https://www.idtheftcenter.org/wp-content/uploads/2025/02/ITRC_2024DataBreachReport.pdf/ (last visited Jan. 17, 2026).

[10] Ben Kochman, *FBI*, *Secret Service Warn of Targeted Ransomware*, Law360 (Nov. 18, 2019), https://www.law360.com/articles/1220974/fbi-secret-service-warn-of-targeted-ransomware (last visited Jan. 17, 2026).

such as Defendant, (iii) ransomware gangs were leaking corporate information on dark web portals, and (iv) ransomware tactics included extortion and threatening to release stolen data.

41. In light of the information readily available and accessible before the Data Breach, Defendant, knew or should have known that there was a foreseeable risk that Plaintiff's and Class Members' Private Information could be accessed, exfiltrated, and published as the result of a cyberattack. Data breaches are so prevalent in today's society therefore making the risk of experiencing a data breach entirely foreseeable to Defendant.

***The Value of Private Information***

42. The high value of Private Information is simple and well established. Through data breaches, criminals acquire and steal individuals' personal data to monetize the information. Criminals monetize the data by selling the stolen information on the internet black market (aka the dark web) to other criminals who then use the information to commit identity theft in various ways.

43. The dark web is an unindexed layer of the internet that requires special software or authentication to access.[11] Criminals in particular favour the dark web as it offers a degree of anonymity to visitors and website publishers. Unlike the traditional or "surface" web, dark web users need to know the web address of the website they wish to visit in advance. For example, on the surface web, the CIA's web address is cia.gov, but on the dark web the CIA's web address is ciadotgov4sjwlzihbbgxnqg3xiyrg7so2r2o3lt5wz5ypk4sxyjstad.onion.[12] This prevents dark web marketplaces from being easily monitored by authorities or accessed by those not in the know.

44. For example, when the U.S. Department of Justice announced their seizure of AlphaBay—the largest online "dark market"—in 2017, AlphaBay had more than 350,000 listings,

---

[11] Louis DeNicola, *What Is the Dark Web?*, Experian (May 12, 2021), https://www.experian.com/blogs/ask-experian/what-is-the-dark-web/ (last visited Sept. 10, 2025).

[12] *Id.*

many of which concerned stolen or fraudulent documents that could be used to assume another person's identity."[13] Marketplaces similar to the now-defunct AlphaBay continue to be "awash with [PII] belonging to victims from countries all over the world."[14]

45. Plaintiff's and Class Memebrs' unencrypted Private Information has or will end up for sale on the dark web because that is the *modus operandi* of hackers. In addition, the unencrypted and detailed Private Information may fall into the hands of companies that will use it for targeted marketing without Plaintiff's or Class Members' approval. Unauthorized individuals can easily access the Plaintiff's and Class Members' Private Information.

46. The value of Plaintiff's and Class Members' Private Information on the black market is considerable. Stolen Private Information trades on the black market for years and is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen Private Information can be worth up to $1,000.00 depending on the type of information obtained. Criminals frequently post and sell stolen information openly and directly on the "dark web"—further exposing the information.

47. Private Information remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[15] Criminals can also purchase access to entire company data breaches from $900 to $4,500.[16]

---

[13] Armor Team, *Stolen PII & Ramifications: Identity Theft and Fraud on the Dark Web*, Armor (Apr. 3, 2018), https://res.armor.com/resources/blog/stolen-pii-ramifications-identity-theft-fraud-dark-web/ (last visited Sept. 10, 2025).

[14] *Id.*

[15] *Id.*

[16] Bryan Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), https://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millions-worrying-about-identity-theft (last visited Sept. 10, 2025).

48. It can take victims years to discover such identity theft and fraud. This gives criminals plenty of time to sell the Private Information far and wide.

49. Because a person's identity is akin to a puzzle with multiple data points, the more accurate pieces of data an identity thief obtains about a person, the easier it is for the thief to take on the victim's identity, or to track the victim to attempt other hacking crimes against the individual to obtain more data to perfect a crime.

50. For example, armed with just a name and date of birth, a data thief can utilize a hacking technique referred to as "social engineering" to obtain even more information about a victim's identity, such as a person's login credentials or Social Security number. Social engineering is a form of hacking whereby a data thief uses previously acquired information to manipulate and trick individuals into disclosing additional confidential or personal information through means such as spam phone calls and text messages or phishing emails. Data breaches are often the starting point for these additional targeted attacks on the victims.

51. Identity thieves can also use an individual's personal data and Private Information to obtain a driver's license or official identification card in the victim's name but with the thief's picture; rent a house or receive medical services in the victim's name; use the victim's Private Information to obtain government benefits; and may even give the victim's personal information to police during an arrest resulting in criminal proceedings commenced under the victim's name. In addition, identity thieves may obtain a job using the victim's information, and file a fraudulent tax return using the victim's information.[17]

52. One example of criminals piecing together bits and pieces of compromised Private

[17] Social Security Administration, *Identity Theft and Your Social Security Number,* 4 (Oct. 2024), https://www.ssa.gov/pubs/EN-05-10064.pdf (last visited Jan. 17, 2026).

Information to create comprehensive dossiers on individuals is called "Fullz" packages.[18] These dossiers are both shockingly accurate and comprehensive. With "Fullz" packages, cybercriminals can cross-reference two sources of Private Information to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy to assemble complete dossiers on individuals. For example, they can combine the stolen Private Information, and with unregulated data found elsewhere on the internet (like phone numbers, emails, addresses, etc.).

53. The development of "Fullz" packages means that the Private Information exposed in the Data Breach can easily be linked to Plaintiff's and Class Members' data that is available on the internet. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the Private Information stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiffs and Class Members, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff's and other Class Members' stolen Private Information is being misused, and that such misuse is fairly traceable to the Data Breach.

54. According to the FBI's Internet Crime Complaint Center (IC3) 2019 Internet Crime Report, Internet-enabled crimes reached their highest number of complaints and dollar losses that

[18] "Fullz" is fraudster speak for data that includes the information of the victim, including, but not limited to, the name, address, credit card information, social security number, date of birth, and more. As a rule of thumb, the more information you have on a victim, the more money that can be made off those credentials. Fullz are usually pricier than standard credit card credentials, commanding up to $100 per record (or more) on the dark web. Fullz can be cashed out (turning credentials into money) in various ways, including performing bank transactions over the phone with the required authentication details in-hand. Even "dead Fullz," which are Fullz credentials associated with credit cards that are no longer valid, can still be used for numerous purposes, including tax refund scams, ordering credit cards on behalf of the victim, or opening a "mule account" (an account that will accept a fraudulent money transfer from a compromised account) without the victim's knowledge. *See, e.g.,* Brian Krebs, *Medical Records for Sale in Underground Stolen from Texas Life Insurance Firm,* Krebs on Security (Sep. 18, 2014), https://krebsonsecurity.com/2014/09/medical-records-for-sale-in-underground-stolen-from-texas-life-insurance-firm (last visited Jan. 17, 2026).

year, resulting in more than $3.5 billion in losses to individuals and business victims.[19]

55. Further, according to the same report, "rapid reporting can help law enforcement stop fraudulent transactions before a victim loses the money for good."[20] Yet, Defendant failed to rapidly report to Plaintiff and Class Members that their Private Information was stolen. Defendant's failure to promptly and properly notify Plaintiff and Class Members of the Data Breach exacerbated Plaintiff's and Class Members' injuries by depriving them of the earliest ability to take appropriate measures to protect their Private Information and take necessary steps to mitigate the harm caused by the Data Breach.

56. Victims of identity theft also often suffer embarrassment, blackmail, or harassment in person or online, and/or experience financial losses resulting from fraudulently opened accounts or misuse of existing accounts.

57. In addition to out-of-pocket expenses that can exceed thousands of dollars and the emotional toll identity theft can take, some victims must spend a considerable time repairing the damage caused by the theft of their Private Information. Victims of new account identity theft will likely have to spend time correcting fraudulent information in their credit reports and continuously monitor their reports for future inaccuracies, close existing bank/credit accounts, open new ones, and dispute charges with creditors.

58. Further complicating the issues faced by victims of identity theft, data thieves may wait years before attempting to use the stolen Private Information. To protect themselves, Plaintiff and Class Members will need to remain vigilant for years or even decades to come.

---

[19] FBI, *2019 Internet Crime Report Released*, FBI.gov (Feb. 11, 2020), https://www.fbi.gov/news/stories/2019-internet-crime-report-released-021120 (last visited Jan. 17, 2026).

[20] *Id.*

***Common Injuries and Damages to Plaintiff and Class Members***

59. Defendant's failure to implement or maintain adequate data security measures for Plaintiff's and Class Members' Private Information directly and proximately injured Plaintiff and Class Members by the resulting disclosure of their Private Information in the Data Breach.

60. Defendant disregarded Plaintiff's and Class Members' rights by (a) intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure that its network was protected against unauthorized intrusions; (b) failing to disclose that it did not have adequately robust security protocols and training practices in place to safeguard Plaintiff's and Class Members' Private Information; (c) failing to take standard and reasonably available steps to prevent the Data Breach; (d) concealing the existence and extent of the Data Breach for an unreasonable duration of time; and (e) failing to provide Plaintiff and Class Members prompt and accurate notice of the Data Breach.

61. Because of Defendant's failure to prevent the Data Breach, Plaintiff and Class members suffered—and will continue to suffer—damages. These damages include, inter alia, monetary losses, lost time, anxiety, and emotional distress. Also, they suffered or are at an increased risk of suffering:

a. identity theft and fraud;

b. loss of time to mitigate the risk of identity theft and fraud

c. diminution in value of their Private Information;

d. out-of-pocket costs from trying to prevent, detect, and recover from identity theft and fraud;

e. lost benefit of the bargain and opportunity costs and wages from spending time trying to mitigate the fallout of the Data Breach by, inter alia, preventing,

detecting, contesting, and recovering from identity theft and fraud;

f. delay in receipt of tax refund monies;

g. loss of the opportunity to control how their Private Information is used;

h. compromise and continuing publication of their Private Information;

i. unauthorized use of their stolen Private Information;

j. invasion of privacy; and

k. continued risk to their Private Information —which remains in Defendant's possession—and is thus as risk for futures breaches so long as Defendant fails to take appropriate measures to protect the Private Information.

62. To date, Defendant has done little to provide Plaintiff and Class Members with relief for the damages they have suffered because of the Data Breach, including, but not limited to, the costs and loss of time they incurred because of the Data Breach. Plaintiff and Class Members remain at risk of identity theft and fraud for the remainder of their lifetimes.

63. Plaintiff and Class Members have been damaged by the compromise and exfiltration of their Private Information in the Data Breach, and by the severe disruption to their lives as a direct and foreseeable consequence of this Data Breach.

64. Plaintiff's and Class Members' Private Information was compromised and exfiltrated by cyber-criminals as a direct and proximate result of the Data Breach. Plaintiff and Class Members were damaged in that their Private Information is in the hands of cyber criminals.

65. As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have been placed at an actual, present, immediate, and continuing increased risk of harm from fraud and identity theft.

66. As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have been forced to expend time dealing with the effects of the Data Breach.

67. Plaintiff and Class Members face substantial risk of out-of-pocket fraud losses such as loans opened in their names, medical services billed in their names, tax return fraud, utility bills opened in their names, credit card fraud, and similar identity theft.

68. Plaintiff and Class Members face substantial risk of being targeted for future phishing, data intrusion, and other illegal schemes based on their Private Information as potential fraudsters could use that information to more effectively target such schemes to Plaintiff and Class Members.

69. Plaintiff and Class Members may also incur out-of-pocket costs for protective measures such as credit monitoring fees, credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach.

70. Plaintiff and Class Members also suffered a loss of value of their Private Information when it was acquired by cyber thieves in the Data Breach. Many courts have recognized the propriety of loss of value damages in related cases.

71. Plaintiff and Class Members have spent and will continue to spend significant amounts of time to monitor their financial accounts and records for misuse.

72. Further, because of Defendant's conduct, Plaintiff and Class Members are forced to live with the anxiety that their Private Information—which contains the most intimate details about a person's life—may be disclosed to the entire world, thereby subjecting them to embarrassment and depriving them of any right to privacy whatsoever.

73. As a direct and proximate result of Defendant's actions and inactions, Plaintiff and Class Members have suffered anxiety.

74. The actual and adverse effects to Plaintiff and Class Members, including the imminent, immediate, and continuing increased risk of harm for identity theft, identity fraud and/or medical fraud directly or proximately caused by Defendant's wrongful actions and/or inaction and the resulting Data Breach require Plaintiff and Class Members to take affirmative acts to recover their peace of mind and personal security including, without limitation, purchasing credit reporting services, purchasing credit monitoring and/or internet monitoring services, frequently obtaining, purchasing and reviewing credit reports, bank statements, and other similar information, instituting and/or removing credit freezes and/or closing or modifying financial accounts, for which there is a financial and temporal cost. Plaintiff and other Class Members have suffered, and will continue to suffer, such damages for the foreseeable future.

***Plaintiff Nancy Greiwe's Experience***

75. At all times relevant Plaintiff Greiwe was a customer of Defendant and a data breach victim.

76. As a condition of receiving Defendant's services, Plaintiff Greiwe was required to provide her Private Information to Defendant.

77. In providing her Private Information to Defendant, Plaintiff trusted that Defendant would use reasonable measures to protect it according to industry standards and state and federal law.

78. On or about August 28, 2025, Defendant sent Plaintiff Greiwe a Notice informing her that her Private Information was compromised in the Data Breach.

79. Plaintiff Greiwe is very careful with her Private Information and routinely checks her credit reports and financial statements to protect herself against fraud.

80. Plaintiff Greiwe is careful about sharing her sensitive Private Information. Plaintiff

has never knowingly transmitted unencrypted sensitive Private Information over the internet or any other unsecured source.

81. Plaintiff Greiwe stores any documents containing her sensitive Private Information in a safe and secure location or destroys the documents. Moreover, Plaintiff diligently chooses unique usernames and passwords for her sensitive online accounts.

82. Plaintiff Greiwe would not have entrusted her Private Information to Defendant had she known that Defendant's data security practices were inadequate and susceptible to data disclosures and privacy violations.

83. As a result of its inadequate cybersecurity measures, Defendant exposed Plaintiff Greiwe's Private Information for theft by cybercriminals.

84. Defendant deprived Plaintiff Greiwe of the earliest opportunity to guard herself against the Data Breach's effects by failing to promptly notify her about the Data Breach.

85. Plaintiff Greiwe suffered actual injury from the exposure of her Private Information—which violates her rights to privacy.

86. Plaintiff Greiwe suffered actual injury in the form of damages to and diminution in the value of her Private Information. After all, Private Information is a form of intangible property—property that Defendant was required to adequately protect.

87. As a result of the Data Breach, Plaintiff Greiwe has spent time and made reasonable efforts to mitigate the Data Breach's impact, including but not limited to researching the Data Breach, reviewing her credit card and financial account statements, and monitoring her credit information.

88. Plaintiff Greiwe will continue to spend considerable time and effort monitoring her accounts to protect herself from identity theft. Plaintiff fears for her personal and financial security.

Plaintiff has and is experiencing feelings of anxiety, stress, fear, and frustration because of the Data Breach. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that the law contemplates and addresses.

89. In the aftermath of the Data Breach, Plaintiff Greiwe has received spam emails and text messages attempting to solicit payments from her.

90. Since the Data Breach, Plaintiff Greiwe received a notification that her Private Information was published on the Dark Web.

91. Plaintiff Greiwe is now subject to the present and continuing risk of fraud, identity theft, and misuse resulting from her Private Information being placed in the hands of unauthorized third parties. This injury is worsened by Defendant's failure to promptly inform Plaintiff about the Data Breach.

92. Once an individual's Private Information is for sale and access on the Dark Web, cybercriminals are able to use the stolen and compromised information to gather and steal even more information.[21] Plaintiff's Private Information was compromised as a result of the Data Breach.

93. Plaintiff Greiwe has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains in Defendant's possession, is protected and safeguarded from future breaches. Plaintiff Greiwe also has a continuing interest in lifetime credit monitoring and identity theft monitoring on account of the Data Breach.

***Defendant Fails to Comply with the FTCA***

94. According to the Federal Trade Commission ("FTC"), the need for data security

---

[21] Ryan Toohill, *What do Hackers do with Stolen Information,* Aura (Sept. 5, 2023), https://www.aura.com/learn/what-do-hackers-do-with-stolen-information (last visited Jan. 17, 2026).

should be factored into all business decision-making. To that end, the FTC has issued numerous guidelines identifying best data security practices that businesses, such as Defendant, should employ to protect against the unlawful exposure of Private Information.

95. In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established guidelines for fundamental data security principles and practices for business. The guidelines explain that businesses should: (i) protect the personal information that they keep; (ii) properly dispose of personal information that is no longer needed; (iii) encrypt information stored on computer networks; (iv) understand their network's vulnerabilities; and (v) implement policies to correct security problems.

96. The guidelines also recommend that businesses watch for large amounts of data being transmitted from the system and have a response plan ready in the event of a breach.

97. The FTC recommends that companies not maintain information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that their vendors have implemented reasonable security measures.

98. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect individuals data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

99. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiff's and Class Members' Private Information constitutes an

unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

***Defendant Fails to Comply with Industry Standards***

100. Experts studying cybersecurity routinely identify financial corporations as being particularly vulnerable to cyberattacks because of the value of the Private Information which they collect and maintain.

101. Several best practices have been identified that—at a minimum—should be implemented by businesses like Defendant. These industry standards include: educating all employees regarding cybersecurity; strong passwords; multi-layer security, including firewalls, anti-virus, and anti- malware software; encryption (making data unreadable without a key); multi-factor authentication; backup data; and limiting which employees can access sensitive data.

102. Other industry standard best practices include: installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protection of physical security systems; protection against any possible communication system; and training staff regarding critical points.

103. Moreover, companies should retain personal data only as necessary, with legal justification. Personal data should not be stored beyond the time necessary to achieve its initial purpose of collection. In line with industry standard practices, Defendant should have promptly deleted any data it no longer needed to provide services to Plaintiff and Class Members.

104. Upon information and belief, Defendant failed to implement industry-standard cybersecurity measures, including failing to meet the minimum standards of both the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1,

DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are established standards in reasonable cybersecurity readiness.

105. These frameworks are applicable and accepted industry standards. And by failing to comply with these accepted standards, Defendant opened the door to the criminals—thereby causing the Data Breach.

## CLASS ALLEGATIONS

106. Plaintiff brings this class action, individually and on behalf of the following Class:

> **All individuals residing in the United States whose Personal Identifying Information was compromised, accessed, or acquired by an unauthorized party as a result of the Data Breach.**

107. Specifically excluded from the Class are Defendant, its officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, principals, servants, partners, joint venturers, or entities controlled by Defendant, and its heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or its officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

108. Plaintiff reserves the right to amend the Class definitions above if further investigation and/or discovery reveals that the Class should be expanded, narrowed, divided into subclasses, or otherwise modified in any way.

109. This action may be certified as a class action because it satisfies the numerosity, commonality, typicality, adequacy, and superiority requirements therein.

110. Numerosity: The Class is so numerous that joinder of all Class Members is impracticable. Upon information and belief, the Class is comprised of thousands of members. The Class is sufficiently numerous to warrant certification.

111. Typicality of Claims: Plaintiff's claims are typical of those of other Class Members because Plaintiff, like the unnamed Class, had her Private Information compromised as a result of the Data Breach. Plaintiff is a member of the Class, and her claims are typical of the claims of Class Members. The harms suffered by Plaintiff are similar to that suffered by all other Class Members which was caused by the same misconduct by Defendant.

112. Adequacy of Representation: Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has no interests antagonistic to, nor in conflict with, the Class. Plaintiff has retained competent counsel who are experienced in consumer and commercial class action litigation and who will prosecute this action vigorously.

113. Superiority: A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Because the monetary damages suffered by individual Class Members are relatively small, the expense and burden of individual litigation make it impossible for individual Class Members to seek redress for the wrongful conduct asserted herein. If Class treatment of these claims is not available, Defendant will likely continue its wrongful conduct, will unjustly retain improperly obtained revenues, or will otherwise escape liability for its wrongdoing as asserted herein.

114. Predominant Common Questions: The claims of all Class Members present common questions of law or fact, which predominate over any questions affecting only individual Class Members, including:

a. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

b. Whether Defendant's data security systems prior to and during the Data Breach

complied with applicable data security laws and regulations;

c. Whether Defendant's storage of Plaintiff's and Class Member's Private Information was done in a negligent manner;

d. Whether Defendant had a duty to protect and safeguard Plaintiff's and Class Members' Private Information;

e. Whether Defendant's conduct was negligent;

f. Whether Defendant's conduct violated Plaintiff's and Class Members' privacy;

g. Whether Defendant's conduct violated the statutes as set forth herein;

h. Whether Defendant took sufficient steps to secure Plaintiff's and Class Members' Private Information;

i. Whether Defendant was unjustly enriched; and

j. The nature of relief, including damages and equitable relief, to which Plaintiff and Class Members are entitled.

115. Information concerning Defendant's policies is available from Defendant's records.

116. Plaintiff knows of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a class action.

117. The prosecution of separate actions by individual members of the Class would run the risk of inconsistent or varying adjudications and establish incompatible standards of conduct for Defendant. Prosecution as a class action will eliminate the possibility of repetitious and inefficient litigation.

118. Given that Defendant has not indicated any changes to its conduct or security measures, monetary damages are insufficient and there is no adequate remedy at law.

## CAUSES OF ACTION

### COUNT I
### NEGLIGENCE
### (On Behalf of Plaintiff and the Class)

119. Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

120. Plaintiff brings this claim individually and on behalf of the Class Members.

121. Defendant knowingly collected, came into possession of, and maintained Plaintiff's and Class Members' Private Information, and had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties.

122. Defendant had a duty to have procedures in place to detect and prevent the loss or unauthorized dissemination of Plaintiff's and Class Members' Private Information.

123. Defendant had, and continues to have, a duty to timely disclose that Plaintiff's and Class Members' Private Information within its possession was compromised and precisely the types of information that were compromised.

124. Defendant owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards, applicable standards of care from statutory authority like Section 5 of the FTCA, and other requirements discussed herein, and to ensure that its systems and networks, and the personnel responsible for them, adequately protected individuals' Private Information.

125. Defendant's duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendant and Plaintiffs and Class Members. Defendant was in a position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Plaintiffs and Class Members from a data breach.

126. That special relationship arose because Plaintiff and Class Members entrusted Defendant with their confidential Private Information as a mandatory step in receiving services from Defendant. While this special relationship exists independent from any contract, it is recognized by Defendant's Privacy Policies, as well as applicable laws and regulations. Specifically, Defendant actively solicited and gathered Private Information as part of its business and was solely responsible for and in the position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Plaintiff and Class Members from a resulting data breach.

127. Defendant was subject to an independent duty, untethered to any contract between Defendant and Plaintiff and Class Members, to maintain adequate data security.

128. Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential Private Information.

129. Defendant breached these duties by failing to exercise reasonable care in safeguarding and protecting Plaintiff's and Class Members' Private Information.

The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

a. Failing to adopt, implement, and maintain adequate security measures to safeguard Plaintiff's and Class Members' Private Information;

b. Failing to adequately monitor the security of its networks and systems; and

c. Failing to periodically ensure that its computer systems and networks had plans in place to maintain reasonable data security safeguards.

130. Defendant, through its actions and/or omissions, unlawfully breached its duties to Plaintiff and Class Members by failing to exercise reasonable care in protecting and safeguarding Plaintiff's and Class Members' Private Information within Defendant's possession.

131. Defendant, through its actions and/or omissions, unlawfully breached its duties to Plaintiff and Class Members by failing to have appropriate procedures in place to detect and prevent dissemination of Plaintiff's and Class Members' Private Information.

132. Defendant, through its actions and/or omissions, unlawfully breached its duty to timely disclose to Plaintiff and Class Members that the Private Information within Defendant's possession might have been compromised and precisely the type of information compromised.

133. Defendant breached the duties set forth in 15 U.S.C. § 45, the FTC guidelines, the National Institute of Standards and Technology's Framework for Improving Critical Infrastructure Cybersecurity, and other industry guidelines. In violation of 15 U.S.C. § 45, Defendant failed to implement proper data security procedures to adequately and reasonably protect Plaintiff's and Class Members' Private Information. In violation of the FTC guidelines, *inter alia,* Defendant did not protect the Private Information it keeps; failed to properly dispose of personal information that was no longer needed; failed to encrypt information stored on computer networks; lacked the requisite understanding of its networks' vulnerabilities; and failed to implement policies to correct security issues.

134. It was foreseeable that Defendant's failure to use reasonable measures to protect Plaintiff's and Class Members' Private Information would result in injury to Plaintiff and Class Members. Further, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches.

135. Defendant's breach of duties owed to Plaintiff and Class Members caused

Plaintiff's and Class Members' Private Information to be compromised.

136. But for Defendant's negligent conduct and breach of the above-described duties owed to Plaintiff and Class Members, their Private Information would not have been compromised.

137. As a result of Defendant's failure to timely notify Plaintiff and Class Members that their Private Information had been compromised, Plaintiff and Class Members are unable to take the necessary precautions to mitigate damages by preventing future fraud.

138. As a result of Defendant's negligence and breach of duties, Plaintiff and Class Members are in danger of imminent harm in that their Private Information, which is still in the possession of third parties, will be used for fraudulent purposes, and Plaintiff and Class Members have and will suffer damages including: a substantial increase in the likelihood of identity theft; the compromise, publication, and theft of their personal information; loss of time and costs associated with the prevention, detection, and recovery from unauthorized use of their personal information; the continued risk to their personal information; future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the personal information compromised as a result of the Data Breach; and overpayment for the services or products that were received without adequate data security.

**COUNT II**
**BREACH OF IMPLIED CONTRACT**
**(On Behalf of Plaintiff and the Class)**

139. Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

140. Plaintiff and Class Members provided and entrusted their Private Information to Defendant as a condition of receiving Defendant's services. Plaintiff Class Members provided their Private Information to Defendant as part of Defendant's regular business practices.

141. In so doing, Plaintiff and Class Members entered into implied contracts with Defendant by which Defendant agreed to safeguard and protect such information, to keep such information secure and confidential, and to timely and accurately notify Plaintiff and Class Members if their data had been breached and compromised or stolen, in return for the business services provided by Defendant. Implied in these exchanges was a promise by Defendant to ensure that the Private Information of Plaintiff and Class Members in its possession was secure.

142. Pursuant to these implied contracts, Plaintiff and Class Members provided Defendant with their Private Information. In exchange, Defendant agreed to, among other things, and Plaintiff and Class Members understood that Defendant would: (1) provide services to Plaintiff and Class Members; (2) take reasonable measures to protect the security and confidentiality of Plaintiff's and Class Members' Private Information; and (3) protect Plaintiff's and Class Members' Private Information in compliance with federal and state laws and regulations and industry standards.

143. Implied in these exchanges was a promise by Defendant to ensure the Private Information of Plaintiff and Class Members in its possession was only used to provide the agreed-upon reasons, and that Defendant would take adequate measures to protect Plaintiff's and Class Members' Private Information.

144. A material term of this contract is a covenant by Defendant that it would take reasonable efforts to safeguard that information. Defendant breached this covenant by allowing Plaintiff's and Class Members' Private Information to be accessed in the Data Breach.

145. Indeed, implicit in the agreement between Defendant and Plaintiff and Class Members was the obligation that both parties would maintain information confidentially and securely.

146. These exchanges constituted an agreement and meeting of the minds between the parties.

147. When the parties entered into an agreement, mutual assent occurred. Plaintiff and Class Members would not have disclosed their Private Information to Defendant but for the prospect of utilizing Defendant services. Conversely, Defendant presumably would not have taken Plaintiff's and Class Members' Private Information if it did not intend to provide Plaintiff and Class Members with its services.

148. Defendant was therefore required to reasonably safeguard and protect Plaintiff's and Class Members' Private Information from unauthorized disclosure and use.

149. Plaintiff and Class Members would not have entrusted their Private Information to Defendant in the absence of their implied contracts with Defendant and would have instead retained the opportunity to control their Private Information.

150. Defendant breached the implied contracts with Plaintiff and Class Members by failing to reasonably safeguard and protect Plaintiff's and Class Members' Private Information.

151. Defendant's failure to implement adequate measures to protect the Private Information of Plaintiff and Class Members violated the purpose of the agreement between the parties.

152. As a proximate and direct result of Defendant's breaches of its implied contracts with Plaintiff and Class Members, Plaintiff and the Class Members suffered damages as described in detail above.

**COUNT III**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Class)**

153. Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

154. Plaintiff and Class Members conferred a benefit upon Defendant by providing Defendant with their Private Information.

155. Defendant appreciated or had knowledge of the benefits conferred upon itself by Plaintiff and Class Members. Defendant also benefited from the receipt of Plaintiff's and Class Members' Private Information.

156. Under principles of equity and good conscience, Defendant should not be permitted to retain the full value of Plaintiff's and Class Members' Private Information because Defendant failed to adequately protect their Private Information. Plaintiff and Class Members would not have provided their Private Information to Defendant had they known Defendant would not adequately protect their Private Information.

157. Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiff and Class Members all unlawful or inequitable proceeds received by it because of its misconduct and the Data Breach it caused.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a) For an order determining that this action is properly brought as a class action, certifying a plaintiff Class as defined herein, and appointing Plaintiff as the Representative of the Class and her counsel as Class Counsel;

(b) For damages and/or restitution in amounts to be determined at the trial of this matter;

(c) For an award of statutory damages or penalties to the extent available;

(d) For pre-judgment interest on all amounts awarded; and

(e) Such other and further relief as the Court deems necessary and appropriate.

**JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury of all claims asserted herein so triable.

Dated: January 17, 2026

Respectfully submitted,

/s/ *Terence R. Coates*

Terence R. Coates (85579)
**MARKOVITS, STOCK & DEMARCO, LLC**
119 East Court Street, Suite 530
Cincinnati, Ohio 45202
Telephone: (513) 651-3700
Facsimile: (513) 665-0219
*tcoates@msdlegal.com*

*Attorney for Plaintiff and the Proposed Class*